Reed, P. J.,
delivered the opinion of the court.
Appellee brought suit to recover wages alleged to have been earned by himself personally, and also as assignee of the claims of others for like services, for labor performed in mining. There is no controversy in regard to the length of the time of service of each, nor of the amount of compensation per day; consequently the correctness of the respective claims was conceded, and the only question was as to the liability of the defendants for such claims.
It appears from the allegations of both parties that at the time the contract was made and the parties commenced work the mine was not in pay ore, but anticipating that after certain “ dead work ” was done and a certain connection made, ore would be reached in value and quantity to pay all the expenses of such work, and realize a profit, the parties mutually agreed to enter upon the enterprise and *18 take the chances. Such chances, assumed by each, were that appellants were to furnish sufficient money to pay other current expenses and pay plaintiff and his six associates ‘(his assignors) half wages, — -$1.50 per day, — until the ore body was’ reached, when, from the proceeds of the ore, the back pay of each, — $1.50 per day for each day employed upon the work until ore was reached, — and after that full pay for services at $3.00 per day, and appellants paid all advances. Under this arrangement the work was prosecuted, the ore body reached and mined, but did not realize the sanguine expectation of the parties. It was shown that appellants advanced for expenses, including the $1.50 a day to those prosecuting the work, $4,042.80. The proceeds of ore, over the expense of mining and marketing, was $1,229.99. The $1.50 per day for prosecuting the work remaining unpaid amounted to about $750, which, with the amount advanced by plaintiffs ($4,042.80), aggregated about $4,800, •which, deducting the $1,230, left a deficit of about $3,500, paid out by appellants.
The trouble arose over the application of the $1,230 realized, and the construction of the contract. The plaintiffs contended that by the contract, when sufficient money was realized from ore, they were first entitled to full payment of the $1.50 per day deferred. The defendants (appellants) claimed the right to retain it on their advances. The evidence was conflicting. Which contention, if either, was right, or whether the money should have been applied fro rata, were questions of fact to be determined by the jury, under instructions.
The finding of the jury was for the plaintiffs, with interest, making the sum of $808.83, and judgment upon the verdict.
There was one matter incidental to the trial that may be disposed of before discussing the instructions. The following appears from the records of the trial:
“ Whereupon, on the same 27th day of June, 1894, at about the hour of 1:50 p. M., said jury retired to their room in charge *19 of a sworn bailiff to consider upon their verdict, and that about the hour of 2:15 p. M. of the same day the said jury by direction of the court were again brought into the court, and were told by the court that the court was about to adjourn until the hour of 7:30 o’clock on the afternoon of June 29, 1894, and that if the said jury could agree upon a verdict before that time, thejr should reduce such verdict to writing, duly sign the same by their foreman, and when so signed to enclose the same in an envelope and seal the same and deliver such envelope so sealed containing such verdict to the clerk of the court, and thereupon such jury might separate, but must each of them be present at the opening of the court at 7:30 P. M. of the said 29th day of June, 1894, to listen to the reading of such verdict. Thereupon the court directed said jury to retire in charge of sworn bailiff, and about the hour of 2:20 p. m. said court adjourned to the hour of 7:30 P. M. of June 29,1894; and the judge of said court immediately departed from the county of Clear Creek and did not return until the afternoon of June 29, 1894. That on the afternoon of June 29, 1894, the said court at about the hour of 7:30 said court opened, and all of the said jury was present and answered to the call of their names respectively. Whereupon said sealed verdict, which had been found and placed by said jury in an envelope, sealed, and at about the hour of 5 o’clock p. M. on June 27, 1894, delivered to the clerk of the court, was opened and read to said jury in words and figures as follows.”
Such proceeding was irregular and erroneous. No legal verdict could be so coerced from a jury, in effect subjecting the jury in advance to over two days’ confinement if they failed to agree. A jury is an adjunct, and, when impaneled, a component part of a court, but depends upon the existence of the court. Without a court, there can be no jury. A jury is entitled to consult the court, and if necessary require further instruction. I cannot conceive of a situation where a court could adjourn and leave a jury standing, under sentence or an order of court. The penalty for failure to agree was so *20 great, and the inducement to agree and escape confinement so great, that no verdict found under such circumstances could be allowed to stand. For this error the judgment must be reversed.
The following instructions were given by the court:
“ The court instructs the jury that, if they believe from the evidence that the plaintiff, William F. Wright, Fred T. Harris, O. E. Lanning, Thomas Keast and Stephen Harper were to work upon the Cecil lode under an arrangement or engagement whereby they were to receive $1.50 per day until the connection with the Wallace workings were made, and that thereafter they were to receive the balance of their wages, to wit, $1.50 per day additional, or what is spoken of in the evidence as back wages, out of the first pay coming from said mine, then your verdict should be for the plaintiff, in such sum as the evidence shows him entitled to receive, with interest at the rate of 8 per cent per annum from the 10th day of May, 1893.
“ The court instructs the jury that, if you believe from the evidence that the plaintiff and William F. Wright, Fred T. Harris, O. E. Lanning, Thomas Keast and Stephen Harper went to work upon the Cecil lode under the arrangement whereby they were to receive $1.50 per day until the connection with the Wallace workings were made and that thereafter they were to be paid $3.00 per day, and that, after the money advanced by the defendants to make the connection was repaid to the defendants from the ore taken out, then the balance of their wages, or $1.50 per day additional, was to be paid from the said ore, after the defendants were repaid the money advanced to make such connections, and if you further find from the evidence that sufficient ore in value was not taken out to repay the money advanced by defendants to make such connection with the Wallace, then your verdict should be for the defendants.”
They do not appear to be objectionable for what they contain, and as far as they go are correct, but not sufficiently full and definite. The pleadings of both parties, as well as *21 the evidence, established the fact that on the part of all it was a mutual undertaking, where one party risked the money advanced and the others $1.50 per day for each day’s labor until the designated point was reached and the ore available, that there was no hiring or employment of appellees by appellants, that the proceeds of the ore when struck was the only fund from which payments were to be realized. Such construction of the contract should have been clearly stated by the court. The jury should also have been instructed that the proceeds of the ore having proved inadequate for the full payment of all, it must find from the evidence whether either party was entitled to precedence or priority in payment, and, if so, which party, by virtue of the contract; that plaintiff could not recover the whole amount unless the evidence established the fact that by the terms of the contract the labor was first to be paid in full; otherwise, if the jury found there was no contract in regard to performance or priority, then that the amount should be paid pro rata, and the plaintiffs could only recover their proportionate share.
As the case must be retried, such instructions in effect should be given. The judgment must be reversed and cause remanded for a new trial in accordance with the suggestions here made.

Reversed.